**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MARICELA FLORES TAPIA, JIESI LOPEZ MARTINEZ, FRANCISCO PEREZ and LEONCIO BELENDEZ, Individually and on Behalf of All Others Similarly Situated,**<br><br>                    **Plaintiffs,**<br><br>-against-<br><br>**SMR 912 MANHATTAN AVE CORP. d/b/a BREAD BROTHERS CAFÉ, JOHN DOE CORP. #1, DAVID ROSEN, DANIEL ROSEN and JEREMY ROSEN, Jointly and Severally,**<br><br>                    **Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

Plaintiffs Maricela Flores Tapia, Jiesi Lopez Martinez, Francisco Perez, and Leoncio Belendez (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

1

## NATURE OF THE ACTION

1.       Plaintiffs are former cashiers, counter employees, cooks, food prep, bakers, baristas, and delivery employees at Defendants' cafes located in Brooklyn, New York.  For their work, during the relevant time period, Plaintiffs were not paid minimum wages for all hours worked and were not paid overtime premiums for hours worked over forty (40) in a given workweek.

2.       Plaintiffs bring this action to recover unpaid minimum wages and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also bring claims for unpaid spread-of-hours premiums and for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

3.       Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants in New York.

## JURISDICTION AND VENUE

4.       This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.       Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to

the claims occurred in this district.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

7.      Plaintiff Maricela Flores Tapia ("Flores") was, at all relevant times, an adult individual residing in Kings County, New York.

8.      Plaintiff Jiesi Lopez Martinez ("Lopez") was, at all relevant times, an adult individual residing in Kings County, New York.

9.      Plaintiff Francisco Perez ("Perez") was, at all relevant times, an adult individual residing in Queens County, New York.

10.     Plaintiff Leoncio Belendez ("Belendez") was, at all relevant times, an adult individual residing in Queens County, New York.

11.     Throughout the relevant time period, Plaintiffs performed work for Defendants at two of their four cafés, including one located at 912 Manhattan Avenue, Brooklyn, New York 11222 and one located at 349 Bedford Avenue, Brooklyn, New York 11211.

12.     Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

13.     SMR 912 Manhattan Ave Corp., is an active New York Corporation doing business as "Bread Brothers Bagel Café", with its principal place of business at 912 Manhattan Avenue, Brooklyn, New York 11222, and DOS process address at 350 Meserole Street, Brooklyn, New

York 11206.

14.     JOHN DOE CORP. #1 is a New York Corporation operating the café located at 349 Bedford Avenue, Brooklyn, New York 11249 and doing business as "Bread Brothers Bagel Café".

15.     The corporate entities listed in paragraphs 13 and 14 are hereinafter referred to collectively as "Bread Brothers Café" or the "Corporate Defendants."

16.     At all relevant times, the Corporate Defendants operated together as a single business enterprise utilizing the same practices and policies and, when necessary, shared employees between the various Bread Brothers Café locations.

17.     Defendants' cafes, which are operated through the Corporate Defendants, are engaged in related activities, share common ownership and management, share supplies and employees, and have a common business purpose.

18.     The Corporate Defendants are joint employers of Plaintiffs and the Collective Action Members/Class Members.

19.     Upon information and belief, Defendant David Rosen ("David Rosen") is an owner and operator of the Corporate Defendants.

20.     Upon information and belief, Defendant Jeremy Rosen ("J. Rosen") is an owner and operator of the Corporate Defendants.

21.     Upon information and belief, Defendant Daniel Rosen ("Daniel Rosen") is an owner and operator of the Corporate Defendants.

22.     Defendants David Rosen, J. Rosen and Daniel Rosen are hereinafter referred to collectively as the "Individual Defendants" and, together with the Corporate Defendants, the

4

"Defendants."

23.     The Individual Defendants maintained operational control over the Corporate Defendants and jointly managed Bread Brothers Café by determining the wages and compensation of employees, establishing the schedule of employees, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiffs.

24.     The Individual Defendants jointly employed Plaintiffs, and all similarly situated employees, by acting in the interest of each other with respect to the employees, paying the employees by the same methods, and sharing control over the employees.

25.     The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiffs and the Defendants' other similarly situated employees, and are each "employers" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

26.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

27.     At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

28.     At all relevant times, Plaintiffs, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

29.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

30.    Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since October 23, 2015 and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees at any Bread Brothers Café location (the "Collective Action Members").

31.    A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of these policies, Plaintiffs and the Collective Action Members did not receive the legally-required minimum wages for all hours worked and overtime premium payments for all hours worked in excess of forty (40) hours per week.

32.    Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## RULE 23 CLASS ACTION ALLEGATIONS

33.    Pursuant to the NYLL, Plaintiffs bring their Third through Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants at any time since October 23, 2012 and through the entry of judgment in this case (the "Class Period") who worked as non-management employees at any Bread Brothers Café location in New York (the "Class Members").

6

34.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

35.    The Class Members are so numerous that joinder of all members is impracticable.

36.    Upon information and belief, there are well in excess of forty (40) Class Members.

37.    The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not limited to:

a.  whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.  whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wage for all hours worked;

d.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

e.  whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts or split shifts in excess of ten (10) hours;

f.  whether Defendants failed to provide Plaintiffs and the Class Members with a

proper statement of wages with every wage payment as required by the NYLL;

g.   whether Defendants failed to provide proper wage notice to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

h.   whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

i.   whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

38.   Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like all Class Members, are café employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, paid less than the statutory minimum wage for all hours worked, were not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, were not paid spread-of-hours premiums when working a shift and/or split shift of ten (10) or more hours, did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

39.   Plaintiffs and their Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

40.   Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

8

41.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

42.     Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

43.     The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Bread Brothers Café**

44.     Upon information and belief, during the relevant time period, Defendants have owned and operated at least four (4) Bread Brothers Café locations:

- Bushwick Location (220 Bushwick Avenue, Brooklyn, New York 11206);

- Grand Street Location (810 Grand Street, Brooklyn, New York 11211);

- Manhattan Avenue Location (912 Manhattan Avenue, Brooklyn, New York 11222);

- Bedford Location (349 Bedford Avenue, Brooklyn, New York 11211).

45.     The operating hours during the relevant timer period were as follows: the Bushwick and Manhattan Avenue Locations: Mondays through Sundays from 6:00 am to 10:00 pm; the Grand Street Location:  Mondays to Fridays from 6:00 am to 5:00 pm and Saturdays and Sundays from 7:00 am until 5:00 pm; and the Bedford Location, which is now closed: Mondays to Sundays from 6:00 am to 7:00 pm. (*See* https://breadbrotherscafe.com/locations/).

46.    A news article from *DNAInfo* dated July 15, 2014, provided the following information regarding the Defendants: "…Three Rosen brothers opened the first location of the bagel café three years ago at 220 Bushwick Ave. and then opened a second at 810 Grand Street. Greenpoint's spot at 912 Manhattan Ave. will be their third.   …Despite offering all the 'fads' in food, the café is based in an old-school mentality, Rosen said.   The Rosen brothers run a $36 million baking and bagel ingredient distribution company called David Rosen Bakery Supply, which has been run by their family since 1917, he said. Their warehouse at 350 Meserole St. is just blocks away from the original retail location. The café, Rosen said, is 'a continuation of our tradition' in the bagel industry. 'It was a natural growth for us', he said." (*See* https://www.dnainfo.com/new-york/20140715/greenpoint/bread-brothers-bagel-cafe-bring-more-than-30-cream-cheeses-greenpoint/).

47.    Upon information and belief, the Individual Defendants have owned and operated for more than four (4) generations, since in or around 1917, a warehouse that supplied and provided bakery products such as ingredients, paper and packaging, baking tools, and decorating supplies, to commercial and home bakers.

48.    Throughout the relevant time period, the Individual Defendants have operated and managed the Bread Brothers Café locations through the Corporate Defendants, since in or around 2011.

49.    SMR 912 Manhattan Ave. Corp. was registered with the New York State Department of State, Division of Corporations on March 8, 2013.

50.    Upon information and belief, Defendants David Rosen, Jeremy Rosen and Daniel Rosen are a constant presence and regularly visit the various locations of Bread Brothers Café, to

manage and/or check in on their managers and the operations of the cafés and take an active role in ensuring that the cafés are run in accordance with their procedures and policies.

51.     Upon information and belief, at all relevant times, the Individual Defendants have had power over payroll and personnel decisions at Bread Brothers Café, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

52.     Upon information and belief, the Individual Defendants, directly or through their agents and employees, operate and manage all Bread Brothers Café locations with the same or substantially similar employment practices and policies, and through common management, ownership and financial control.

**Plaintiffs' Work for Defendants**

53.     **Plaintiff Maricela Flores Tapia** was employed by Defendants as a cashier, barista, counter employee, and food prep, at their Bedford Location from in or around July 2017 through in or around May 2018 (the "Flores Employment Period").

54.     At the beginning of the Flores Employment Period, from in or around July 2017 to in or around October 2017, Plaintiff Flores was typically scheduled to work four (4) days per week, with most Tuesdays, Wednesdays, and Thursdays off. Plaintiff Flores generally worked from approximately 7:00 am to approximately 3:00 pm, for a total of approximately thirty-two (32) hours per week.  After that short period of approximately three (3) months, Plaintiff Flores was scheduled to work five (5) days per week, with most Mondays and Tuesdays off.  Plaintiff Flores typically worked Wednesdays, Fridays, Saturdays, and Sundays, from approximately 6:00 am to between approximately 3:00 pm and 4:00 pm, and sometimes longer, shifts of approximately nine

(9) to ten (10) hours.  On Thursdays, Plaintiff Flores generally worked from approximately 6:00 am to approximately 6:00 pm, twelve (12) hour shifts, for a total of approximately forty-eight (48) to fifty-two (52) hours per week.

55.     At the end of the Flores Employment Period, from in or around April 2018 to in or around May 2018, Plaintiff Flores generally worked five (5) days per week with the following schedule: Mondays and Tuesdays off; Wednesdays, Fridays, Saturdays and Sundays, from approximately 7:00 am to between approximately 5:00 pm and 6:00 pm, shifts of ten (10) to eleven (11) hours; and Thursdays, from approximately 6:00 am to between approximately 6:00 pm and 6:30 pm, shifts of twelve (12) to thirteen (13) hours per day, for a total of approximately fifty-two (52) to fifty-six and one-half (56.5) hours per week.

56.     For her work, during 2017, Plaintiff Flores was paid the amount of eleven dollars ($11.00) per hour, for all hours worked, including those beyond forty (40) hours in a given workweek.  During 2018, until the end of her employment period, Plaintiff Flores was paid the amount of thirteen dollars ($13.00) per hour, for all hours worked, including those beyond forty (40) hours in a given workweek.

57.     Plaintiff Flores was not paid overtime premiums of one and one-half (1.5) times her regular hourly rate for hours over forty (40) each workweek.

58.     Throughout the Flores Employment Period, Plaintiff was paid weekly and received her wages entirely in cash, without a pay stub or any other wage statement that provided information about hours worked or the wage rate(s) paid during the work week.  Plaintiff Flores received her payment from the manager of the café in an envelope and, in order to receive her wages, she was required to sign a document which only contained information about the amount

of money she was receiving for that specific week.

59.     **Plaintiff Jiesi Lopez Martinez** was employed by Defendants as a cook, grill man, counter employee, cashier, and delivery employee, at the Bedford Location, from in or around June 2017 to in or around June 2018 (the "Lopez Employment Period").

60.     At the beginning of the Lopez Employment Period, from in or around June 2017 to in or around September 2017, Plaintiff Lopez was typically scheduled to work six (6) days per week, with most Mondays off. During this period, Plaintiff Lopez generally worked with the following schedule:  Tuesdays, Fridays, Saturdays, and Sundays, from approximately 7:00 am to approximately 3:00 pm or longer, eight (8) hour shifts; Wednesdays from approximately 7:00 am to approximately 5:00 pm or longer, ten (10) hour shifts; Thursdays from approximately 6:00 am to approximately 3:00 pm or longer, nine (9) hour shifts, for a total of approximately fifty-one (51) hours per week and sometimes more.

61.     Thereafter, from in or around September 2017 to in or around April 2018, Plaintiff Lopez generally worked six (6) days per week, with most Tuesdays off. Plaintiff Lopez typically worked with the following schedule: Mondays, from approximately 7:00 am to approximately 6:00 pm, eleven (11) hour shifts; Wednesdays and Thursdays, from approximately 6:00 am to approximately 6:00 pm, twelve (12) hour shifts; Fridays, Saturdays, and Sundays, from approximately 7:00 am to approximately 3:00 pm, eight (8) hour shifts, for a total of approximately fifty-nine (59) hours per week.

62.     From in or around April 2018 to in or around June 2018, at the end of the Lopez Employment Period, Plaintiff Lopez generally worked six (6) days per week, with most Tuesdays off, with the following schedule: Mondays and Wednesdays, from approximately 7:00 am to

13

between approximately 6:00 pm and 6:30 pm, eleven (11) to eleven and one-half (11.5) hour shifts; Thursdays, from approximately 6:00 am to between approximately 6:00 pm and 6:30 pm, twelve (12) and twelve and one-half (12.5) hour shifts; Fridays, from approximately 7:00 am to between approximately 5:00 pm and 6:00 pm, ten (10) to eleven (11) hour shifts; Saturdays, from approximately 7:00 am to between approximately 6:00 pm and 6:30 pm, eleven (11) to eleven and one-half (11.5) hour shifts; and Sundays from approximately 7:00 am to between approximately 3:00 pm and 4:00 pm, eight (8) to nine (9) hour shifts, for a total of approximately sixty-three (63) to sixty-seven (67) hours per week.

63.    For his work, during 2017, Plaintiff Lopez was paid the amount of eleven dollars ($11.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek. During 2018, until the end of his employment period, Plaintiff Lopez was paid the amount of thirteen dollars ($13.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.

64.    Plaintiff Lopez was not paid overtime premiums of one and one-half (1.5) times his regular hourly rate for hours over forty (40) each workweek.

65.    Throughout the Lopez Employment Period, Plaintiff Lopez was paid weekly and received his wages entirely in cash, without a pay stub or any other wage statement that provided information about hours worked or the rate(s) paid during the work week.  Plaintiff Lopez received his payment from the manager of the café in an envelope and, in order to receive his wages, he was requested to sign a document which only contained information about the amount of money he was receiving for that specific week.

66.    **Plaintiff Francisco Perez** was employed by Defendants as a cook, food prep,

porter, counter employee, cashier, baker, and delivery employee, at the Bedford Location, from on or about July 1, 2017 to on or about April 29, 2018 (the "Perez Employment Period").

67.     At the beginning of the Perez Employment Period, from July 2017 to in or around December 2017, Plaintiff Perez was typically scheduled to work six (6) days per week, with most Tuesdays off. Plaintiff Perez generally worked Mondays through Sundays, from approximately 6:00 am to approximately 5:00 pm, eleven (11) hour shifts, for a total of approximately sixty-six (66) hours per week.

68.     Thereafter, from in or around December 2017 until the end of his employment period, Plaintiff Perez continued to work six (6) days per week, with most Tuesdays off. During this period, each day Plaintiff Perez worked from approximately 4:00 am to approximately 4:00 pm, twelve (12) hour shifts, for a total of approximately seventy-two (72) hours per week.

69.     For his work, during 2017, Plaintiff Perez was paid the amount of ten dollars and fifty cents ($10.50) per hour, for all hours worked, including those beyond forty (40) in a given workweek.  During 2018, from in or around January 2018 until the end of his employment period, Plaintiff Perez was paid a fixed salary in the amount of seven hundred and fifty dollars ($750.00) per week, regardless the number of hours worked during a given workweek.

70.     Plaintiff Perez was not paid the legally-required minimum wages for all hours worked and was not paid overtime premiums of one and one-half (1.5) times his regular hourly rate for hours over forty (40) each workweek.

71.     Throughout the Perez Employment Period, Plaintiff Perez was paid weekly and received his wages entirely in cash, without a pay stub or any other wage statement that provided information about hours worked or the wage rate(s) paid during the work week.  Plaintiff Perez

15

received his payment from the manager of the café in an envelope and, in order to receive his wages, he was requested to sign a document which only contained information about the amount of money he was receiving for that specific week.

72.    **Plaintiff Leoncio Belendez**, was employed by Defendants as a grill man, cook, food prep, porter, counter employee, cashier, and barista, at the 912 Manhattan Location, from in or around November 2014 to in or around August 2018 (the "Belendez Employment Period").

73.    At the beginning of the Belendez Employment Period, from in or around November 2014 to in or around the end of 2016, Plaintiff Belendez was typically scheduled to work six (6) days per week, with most Wednesdays off. Plaintiff Belendez generally worked Mondays through Saturdays, from approximately 7:00 am to approximately 7:00 pm or longer, at least twelve (12) hour shifts, and Sundays from approximately 7:00 am to approximately 5:00 pm or longer, at least ten (10) hour shifts, for a total of approximately seventy (70) hours or more per week.

74.    Thereafter, from in or around 2017 to the end of his employment period in or around August 2018, Plaintiff Belendez continued to work six (6) days per week, with most Wednesdays off, but with a different schedule than before. If Plaintiff Belendez was requested to help with a catering order, which happened typically at least twice per month, Plaintiff Belendez added a 7th day of work for the week, adding generally five (5) to six (6) hours to his regular schedule.  During this period, Plaintiff Belendez typically worked Mondays, Tuesdays, Thursdays, and Fridays, from approximately 5:00 am to approximately 7:00 pm, fourteen (14) hour shifts. On weekends, Saturdays and Sundays, Plaintiff Belendez generally worked from between approximately 6:00 am and 6:30 am to approximately 7:00 pm, thirteen (13) and thirteen and one-half (13.5) hour shifts, for a total of approximately eighty-two (82) to eighty-three (83) hours per week, or more if

he had to add the 7th day to assist with catering orders.

75.     For his work, during the first week of employment, Plaintiff Belendez was paid the amount of nine dollars ($9.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.  For an additional approximately two (2) months, until the end of 2014, Plaintiff Belendez was paid the amount of nine dollars and fifty cents ($9.50) per hour, for all hours worked. From the beginning of 2015 for approximately six (6) months, Plaintiff Belendez was paid the amount of ten dollars per hour ($10.00).  From in or around 2015 to in or around 2017, Plaintiff Belendez was paid the amount of twelve dollars ($12.00) per hour.  For in or around 2017 to the end of his employment period, Plaintiff Belendez was paid the amount of fourteen dollars ($14.00) per hour. Throughout the Belendez Employment Period, Plaintiff Belendez did not receive any overtime premium pay for hours worked over forty (40) in a given work week.

76.     Throughout the Belendez Employment Period, Plaintiff Belendez was paid weekly and received his wages entirely in cash, without a pay stub or any other wage statement that provided information about hours worked or the wage rate paid during the work week. Plaintiff Belendez received his payment from the manager of the café in an envelope and, in order to receive his wages, he was required to sign a document.

77.     During Plaintiffs Flores, Lopez, and Perez's respective employment periods at the Bedford Location, Defendants sometimes tracked the hours worked by Plaintiffs through a POS system but, during a certain time period they were requested to track their hours on a time sheet, due to the fact that a new manager had no experience with the use of the POS system.

78.     During Plaintiff Belendez's employment period at the 912 Manhattan Avenue Location, Defendants provided an employee number to Belendez in or around 2017, at the end of

his employment period, in order to track his hours worked through a POS system.  However, on a regular basis, the number assigned to Plaintiff Belendez to track his hours on the POS system was disabled and on those occasions Plaintiff Belendez decided to track his own hours on a piece of paper in order to show the manager the hours he had worked during a specific week.

79.     During their respective employment periods, although Plaintiffs frequently worked a spread of more than ten (10) hours per day or split shifts, they did not receive spread-of-hours premiums equal to an additional hour at the applicable minimum wage for such days.

80.     Throughout their respective employment periods, Plaintiffs were not provided with wage notices at hiring, by February 1 of each year, or proper wage statements with their wage payments each week.

**Defendants' Unlawful Corporate Policies**

81.     Plaintiffs and the Collective Action and Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay failing to pay minimum wages, overtime premiums, and spread-of-hours premiums.

82.     Plaintiffs have spoken with other employees of Defendants who were similarly paid below minimum wage for all hours worked. Defendants' failure to pay Plaintiffs minimum wages for all hours worked is a corporate policy of Defendants which applies to all of their non-management employees throughout the Class Period.

83.     Plaintiffs have spoken with other employees of Defendants who were similarly paid at the same hourly rate for all hours worked, which did not include overtime premium compensation for hours worked in excess of forty (40) in a given workweek. Defendants' failure to pay Plaintiffs overtime compensation of one and one-half (1.5) times their regular hourly rate

for hours over forty (40) each week is a corporate policy of Defendants which applies to non-management employees throughout the Class Period.

84.     Defendants' failure to pay Plaintiffs spread-of-hours premiums for days in which Plaintiffs have worked a spread of more than ten (10) hours and/or a split shift has been a corporate policy which applies to all of their non-management employees who worked more than ten (10) hours in a day and/or a split shift throughout the Class Period.

85.     Defendants' policies of paying certain employees on a "salary" basis rather than an hourly basis after January 1, 2011, violated 12 N.Y.C.R.R. § 146-2.5.

86.     Defendants have not provided Plaintiffs or Class Members with wage notices at the time of hire or by February 1 of each year.

87.     Throughout the Class Period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiffs in positions that require little skill and no capital investment.  Upon information and belief, such individuals were required to work for less than minimum wage and were not paid time and one-half when working in excess of forty (40) hours per week.

88.     Additionally, such individuals were not provided spread-of-hours premiums while working shifts in excess of ten (10) hours, nor were they provided with proper wage statements and wage notices at hiring, by February 1 of each year, or proper wage statements with their wage payments on a weekly basis.

89.     Upon information and belief, throughout the Class Period and continuing until today, defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE
### (Brought on Behalf of Plaintiffs and the Collective Action Members)

90.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

91.     By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

92.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

93.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought on Behalf of Plaintiffs and the Collective Action Members)

94.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

95.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

96.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

97.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
**(Brought on Behalf of Plaintiffs and the Class Members)**

104.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

105.     Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

106.     Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for

unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Class Members)**

107.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

108.    Defendants willfully violated Plaintiffs and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

109.    Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

110.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

111.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

112.     Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SIXTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES</u>**
**(Brought on Behalf of Plaintiffs and the Class Members)**

113.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

114.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the

employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

115.    Due to Defendant's violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendant fifty dollars ($50) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS
### (Brought on Behalf of Plaintiffs and the Class Members)

116.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

117.    Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

118.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.     Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.     An order tolling the statute of limitations;

d.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.      An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.      An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.      An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten hours;

i.      Fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

j.      Two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

k.      An award of prejudgment and post-judgment interest;

l.      An award of costs and expenses of this action together with reasonable attorneys'

and expert fees; and

m.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial

by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      October 23, 2018

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____

Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

27

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Bread Brothers Cafe, et al, David Rosen, Jeremy Rosen y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


_____
Firma

Maricela Flores Tapia.
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Bread Brothers Cafe, et al, David Rosen, Jeremy Rosen y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

_____
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Bread Brothers Cafe, et al, David Rosen, Jeremy Rosen y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

Firma

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Bread Brothers Cafe, et al, David Rosen, Jeremy Rosen y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

_Leoncio Belendez_
Nombre Escrito